STATE OF CONNECTICUT *v.* FREDERICK PAYNE, SR.
(15395)

Callahan, C. J., and Berdon, Norcott, McDonald and Peters, Js.

Argued December 6, 1996—officially released May 6, 1997

*John W. Watson*, senior assistant public defender, for the appellant (defendant).

*Marjorie Allen Dauster*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, *Elpedio Vitale*, assistant state's attorney, and *Zachary R. Osborne*, legal intern, for the appellee (state).

*Opinion*

NORCOTT, J. The defendant, Frederick Payne, Sr., was convicted after a jury trial of risk of injury to a child in violation of General Statutes (Rev. to 1993) § 53-21[1] and misdemeanor coercion in violation of General Statutes § 53a-192.[2] The Appellate Court affirmed the judgment of conviction, and we granted the defendant's petition for certification limited to review of the following questions: "(1) Did the Appellate Court properly hold that General Statutes § 53-21 is violated by conduct posing a risk of injury to a child's mental health? (2) Did the Appellate Court properly hold that, so construed, General Statutes § 53-21 is not unconstitutionally void for vagueness? (3) Did the Appellate Court properly

---

[1] At the time that the defendant was convicted, General Statutes (Rev. to 1993) § 53-21 provided: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

The statute was amended in 1995, but the revisions are not relevant in the present appeal. See Public Acts 1995, No. 95-142, § 1. Hereafter, all references to § 53-21 in this opinion are to the 1993 revision.

[2] General Statutes § 53a-192 provides in relevant part: "(a) A person is guilty of coercion when he compels or induces another person to engage in conduct which such other person has a legal right to abstain from engaging in . . . by means of instilling in such other person a fear that, if the demand is not complied with, the actor or another will: (1) Commit any criminal offense . . . .

"(c) Coercion is a class A misdemeanor except, if the threat is to commit a felony, coercion is a class D felony."

conclude that the trial court adequately instructed the jury on the applicability of General Statutes § 53-21 in the circumstances of this case?"[3] *State* v. *Payne*, 236 Conn. 911, 673 A.2d 112 (1996). We affirm the judgment of the Appellate Court.

The essential facts underlying the jury's verdict are set forth in the opinion of the Appellate Court. "On February 4, 1993, at 5 p.m., the defendant approached three boys, R, age eight, his brother A, age five, and their friend L, age ten, in a dark hallway of a vacant apartment building in a New Haven housing project. Standing in the doorway so as to prevent the boys from leaving, the defendant ordered the boys to urinate into a cup.[4] The defendant told R that he was going to kill him if he did not comply. After all three boys urinated, the defendant gave them $1 and allowed them to leave. R and A ran home crying and told their mother, T, what had occurred.

"T and her sons approached Officers Brian Morris and John Dalton of the New Haven police department in the courtyard of the housing project. T informed the police officers of the incident and described the defendant. Morris and Dalton told T to return home and to wait for their telephone call. In an effort to locate the defendant, Morris and Dalton proceeded to a nearby parole office. Morris and Dalton described the defend-

---

[3] The defendant also claimed that the trial court (1) improperly denied his motion for judgment of acquittal on the grounds that there was insufficient evidence to support the convictions, and (2) abused its discretion in failing to issue a capias compelling the appearance of two defense witnesses and in excluding evidence of prior acts by the defendant offered to establish that the defendant had acted in conformity with them at the time of the crime. These issues, however, are not before this court in the certified appeal.

[4] "As the result of a prior conviction, the defendant was under the supervision of a parole officer and subject to random urine testing for drugs and alcohol. The defendant approached the victims in order to obtain a clean urine sample to give as his own to his parole officer." *State* v. *Payne*, 40 Conn. App. 1, 3 n.3, 669 A.2d 582 (1995).

ant to a parole officer who stated that the defendant was currently in the building attending a drug and alcohol recovery meeting. Morris and Dalton then telephoned T and requested that she and her sons meet them there. At the [parole] office, R and A positively identified the defendant as the man who had forced them to urinate. The police arrested the defendant and, upon searching him, seized a small plastic bottle of urine they found hidden in the waistband of his underwear." *State* v. *Payne*, 40 Conn. App. 1, 3–4, 669 A.2d 582 (1995). Additional findings of the Appellate Court will be provided where necessary.

I

The defendant was prosecuted and convicted under the first part of § 53-21,[5] which provides that "[a]ny person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired . . . shall be fined not more than five hundred dollars or imprisoned *not more than ten years* or both." In instructing the jury, the trial court defined health as "a state of being hale, sound or whole in body, mind or soul, or well-being."[6] The defendant now contends that the Appellate Court improperly concluded that the word "health," as used in the first part of § 53-21, includes a child's mental health. We disagree.

Our resolution of the defendant's claim begins with an analysis of § 53-21. In this endeavor, "[o]ur fundamental objective is to ascertain and give effect to the apparent

[5] In *State* v. *Dennis*, 150 Conn. 245, 250, 188 A.2d 65 (1963), this court parsed § 53-21 into two parts.

[6] This definition of health was derived from Black's Law Dictionary. "The [trial] court used the model charge for risk of injury as set forth in D. Borden & L. Orland, 5 Connecticut Practice Series: Criminal Jury Instructions (Sup. 1994) § 10.8A, which included this definition." *State* v. *Payne*, supra, 40 Conn. App. 9.

intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citations omitted; internal quotation marks omitted.) *State* v. *Metz*, 230 Conn. 400, 409, 645 A.2d 965 (1994). The general purpose of § 53-21 is to protect the physical and psychological well-being of children from the potentially harmful conduct of adults. See *State* v. *Pickering*, 180 Conn. 54, 64, 428 A.2d 322 (1980); *State* v. *Dennis*, 150 Conn. 245, 250, 188 A.2d 65 (1963); *State* v. *Palangio*, 24 Conn. App. 300, 305, 588 A.2d 644, cert. denied, 218 Conn. 911, 591 A.2d 813 (1991). Section 53-21 does not define the term "health," and the legislative history of the statute does not provide any insight into the legislature's intent in using the term. "If a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." *State* v. *Indrisano*, 228 Conn. 795, 809, 640 A.2d 986 (1994). The Appellate Court noted that Webster's Third International Collegiate Dictionary defines health as "the condition of an organism or one of its parts in which it performs its vital functions normally or properly: the state of being sound in body or mind . . . . It is further defined as the [s]tate of being hale, sound, or whole in body, mind or soul . . . . Black's Law Dictionary (6th Ed. 1990)." (Citations omitted; internal quotation marks omitted.) *State* v. *Payne*, supra, 40 Conn. App. 9. We agree with the Appellate Court that both the common and the legal definitions of health include mental health and, therefore, that the legislature intended health to include mental health in the context of § 53-21.

Moreover, " '[n]o part of a legislative enactment is to be treated as insignificant or unnecessary, and there is

a presumption of purpose behind every sentence, clause or phrase . . . [so that] no word [or phrase] in a statute is to be treated as superfluous.'" *State* v. *Anderson,* 227 Conn. 518, 528, 631 A.2d 1149 (1993). The Appellate Court emphasized that the first part of § 53-21 "distinguish[es] three alternative classes of potential injury: endangering life or limb, likely injury to health, and impairment of morals." *State* v. *Payne,* supra, 40 Conn. App. 8. We agree that, because the phrase "life or limb is endangered" indicates the intent of the legislature to protect children from conduct creating a risk of physical injury, and because the phrase "morals likely to be impaired" expresses the legislature's intent to prohibit conduct threatening the morality of children, the phrase "health is likely to be injured" must include the risk of injury to the mental health of a child in order to avoid redundancy within the first part of the statute.

The defendant, however, argues that we should adopt a more limited construction of the term "health" under the first part of § 53-21. He posits that this court's ruling in *State* v. *Schriver,* 207 Conn. 456, 542 A.2d 686 (1988), precludes us from finding that the first part of § 53-21 extends to conduct creating a risk of injury solely to mental health.

In *Schriver,* the defendant grabbed a thirteen year old girl around the waist and uttered a sexual remark to her. He was charged and convicted under the second part of § 53-21 for doing an "act likely to impair the health or morals of [a] child." Id., 458. In reversing the defendant's conviction, this court held, inter alia, that the combined judicial gloss of previous cases construing § 53-21 limited the second part of § 53-21 strictly to prosecution for those acts likely to impair the physical health of a child. Id., 466–68. In deciding the present case, the Appellate Court ruled that *Schriver* did not support the defendant's claim because "[u]nlike the present case, the state prosecuted the defendant

in *Schriver* under the second [part] of § 53-21. . . . *Schriver* . . . left open the question of whether the state could pursue a prosecution based solely on an impairment of mental health under the first [part] of the statute." (Citations omitted; internal quotation marks omitted.) *State* v. *Payne,* supra, 40 Conn. App. 5–6. The Appellate Court thus concluded that *Schriver* did not provide an authoritative judicial gloss limiting the meaning of health under the first part of § 53-21 to physical health. Id., 6.

Our review of the grammatical structure, the legislative history and the legislative purpose of § 53-21 leads us to agree with the reasoning and conclusion of the Appellate Court that *Schriver* is legally distinguishable from the present case. Id. Section 53-21 is divided into two distinct parts and separated by the disjunctive. "The use of the disjunctive 'or' between the two parts of the statute indicates a clear legislative intent of separability. *State* v. *Sul,* 146 Conn. 78, 89, 147 A.2d 686 [1958]; *Harris* v. *Egan,* 135 Conn. 102, 105, 60 A.2d 922 [1948]." *State* v. *Dennis,* supra, 150 Conn. 248. The legislative history of § 53-21 supports the conception of § 53-21 as comprising two distinct parts. The statute, as it currently exists, was derived from two separate legislative enactments. "[I]n 1921 the first part of the statute was added to an existing statute. Public Acts 1921, c. 81, amending Rev. 1918, § 6205. It was separated therefrom in 1943, and the second part was added. Sup. 1943, § 733g." *State* v. *Dennis,* supra, 249. Cases construing § 53-21 have emphasized this clear separation between the two parts of the statute and support our conclusion that the limitation on the meaning of health set forth in *Schriver* under the second part of § 53-21 does not have any bearing on the first part of § 53-21. See *State* v. *Schriver,* supra, 207 Conn. 467; *State* v. *Perruccio,* 192 Conn. 154, 159–60, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984); *State*

v. *Dennis*, supra, 250; *State* v. *Velez*, 17 Conn. App. 186, 198–99, 551 A.2d 421 (1988), cert. denied, 210 Conn. 810, 556 A.2d 610, cert. denied, 491 U.S. 906, 109 S. Ct. 3190, 105 L. Ed. 2d 698 (1989).

The defendant further contends that the limiting construction set forth in *Schriver* should govern both parts of § 53-21 because the distinction between creating a situation under the first part and the commission of an act under the second part is irrelevant where both parts address the same harm, namely likely injury to health. We disagree. Although both parts of the statute are intended to protect children from predatory and potentially harmful conduct of adults, the two parts nonetheless are directed at different kinds of harm to children. This court ruled in *Schriver* that the second part, which prohibits "acts" likely to injure the health or morals of a child, was limited to protecting the bodily integrity of a child. Thus, "[t]o have violated the statute . . . the defendant had to have committed acts directly perpetrated on the person of a [child] . . . ." *State* v. *Schriver*, supra, 207 Conn. 467. By contrast, the first part of § 53-21 prohibits the wilful creation of a "situation" likely to impair the health of a child and thus encompasses the protection of the body as well as the safety and security of the environment in which the child exists, and for which the adult is responsible. Id. The plain language of the first part of § 53-21 indicates the legislature's understanding that there is a broad class of intentional conduct that can put a child's wellbeing seriously at risk without any physical contact by the perpetrator. Thus, to limit the meaning of health to include only physical health under this part of the statute would undermine the larger purpose of § 53-21 to afford protection to a child from the potentially harmful wilful conduct of adults.

We find support for our conclusion in the decision of the United States Supreme Court construing health,

under a statute leaving that term undefined, to include mental health. See *United States* v. *Vuitch*, 402 U.S. 62, 72, 91 S. Ct. 1294, 28 L. Ed. 2d 601 (1971) (in abortion statute, in absence of pertinent legislative history and in light of dictionary definitions, health includes physical and mental health). While this court has not had occasion to determine the meaning of health in the first part of § 53-21, the Appellate Court previously has found violations of the first part of the statute based on a meaning of the term broader than strictly physical health. See, e.g., *State* v. *George*, 37 Conn. App. 388, 391–92, 656 A.2d 232 (1995) (leaving seventeen month old child unattended in apartment created situation risking injury to child's health and life or limb); *State* v. *Jones*, 29 Conn. App. 683, 688–89, 617 A.2d 918 (1992) (engaging in high-speed automobile chase and intentional crash with four year old child in car created situation risking child's health); *State* v. *Velez*, supra, 17 Conn. App. 199 (sexual activity with children created situation likely to be harmful to their physical and emotional well-being); *State* v. *Mancinone*, 15 Conn. App. 251, 277, 545 A.2d 1331, cert. denied, 209 Conn. 818, 551 A.2d 757 (1988), cert. denied, 489 U.S. 1017, 109 S. Ct. 1132, 103 L. Ed. 2d 194 (1989) (providing children with alcohol and marijuana created situation risking injury to health or morals). In addition, courts in other jurisdictions have also interpreted health to include mental health. See *Harrison* v. *State*, 644 N.E.2d 888, 890 (Ind. App. 1994) (affirming conviction for placing child in situation that may endanger his life or health; based on dictionary definitions "health" includes physical, psychological, mental and emotional states); *State* v. *Barr*, 354 So. 2d 1344, 1346–47 (La. 1978) ("unjustifiable pain and suffering" can include psychological harm under cruelty to juvenile statute); *Commonwealth* v. *Miller*, 385 Mass. 521, 525 n.6, 526, 432 N.E.2d 463 (1982) (affirming extortion conviction by ruling that phrase

"threatens an injury to the person" includes severe mental anguish); *People* v. *Igaz*, 119 Mich. App. 172, 189–90, 326 N.W.2d 420 (1982) (same); *State* v. *Galusha*, 164 Vt. 91, 94, 665 A.2d 595 (1995) (same).

The defendant also argues that if the legislature had intended to criminalize conduct posing a risk of injury to a child's mental health, it clearly would have done so. This argument fails to give sufficient weight to the breadth of the term "health," which, under both the common and the legal usage of health, includes soundness of mind as well as of body. If the legislature had intended to limit the meaning of health to physical health, it would have done so expressly as it has in other statutes. See, e.g., General Statutes § 45a-677 (a), (b), (f) and (g) (distinguishing powers or duties of guardians of mentally retarded persons regarding physical or mental health and safety); General Statutes § 45a-670 (regarding inability of mentally retarded person to meet essential requirements for his "physical health or safety" for purposes of appointing guardians for mentally retarded persons); General Statutes § 46a-11a (concerning protection of persons with disabilities, abuse is defined as "the wilful infliction of physical pain or injury or the wilful deprivation by a caretaker of services which are necessary to the person's health or safety").

In light of the common meaning and legal definition of health, and the division of the statute into two independent parts, we conclude that the first part of § 53-21 prohibits conduct that places a child in a situation that poses a risk of injury to the child's mental health.

II

The defendant next challenges the Appellate Court's conclusion that his conviction did not violate due process because § 53-21 is not unconstitutionally vague. The defendant argues that neither the statutory lan-

guage nor authoritative judicial gloss gave him sufficient notice that risk of injury to mental health is included within § 53-21, and that, therefore, he did not have fair warning that § 53-21 proscribed the conduct for which he was charged and convicted. We disagree.

"In our assessment of whether the statute passes constitutional muster, we proceed from the well recognized jurisprudential principle that '[t]he party attacking a validly enacted statute . . . bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt and we indulge in every presumption in favor of the statute's constitutionality.' " *State* v. *Ross*, 230 Conn. 183, 236, 646 A.2d 1318 (1994), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995). "The constitutional injunction that is commonly referred to as the void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute or regulation and the guarantee against standardless law enforcement. *Smith* v. *Goguen,* 415 U.S. 566, 572–73, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974); *Mitchell* v. *King,* 169 Conn. 140, 142–43, 363 A.2d 68 (1975)." *State* v. *Schriver,* supra, 207 Conn. 459–60. Thus, "[i]n order to surmount a vagueness challenge, 'a statute [must] afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited.' *McKinney* v. *Coventry,* 176 Conn. 613, 618, 410 A.2d 453 (1979)." *State* v. *Schriver,* supra, 460.

Furthermore, "[a]s a general rule, the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the particular facts at issue." *State* v. *Pickering,* supra, 180 Conn. 57. "For statutes that do not implicate the especially sensitive concerns embodied in the first amendment [or other fundamental rights], we determine the constitutionality of a statute under attack for vagueness by considering its applicability to the particular facts at issue. *State* v. *Proto,* 203 Conn. 682, 696, 526

A.2d 1297 (1987)." *State* v. *Schriver*, supra, 207 Conn. 461. "If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties. . . . References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning." (Citations omitted; internal quotation marks omitted.) *State* v. *Pickering*, supra, 62–63.

With these principles in mind, we turn to the facts and circumstances of the defendant's void for vagueness claim. In so doing, our fundamental inquiry is whether a person of ordinary intelligence would comprehend that the defendant's acts were prohibited under the first part of § 53-21. We conclude that a person of ordinary intelligence would know that health in the first part of § 53-21 would include mental health, and that such a person would have fair warning that the outrageous conduct of using threats to force a child to expose his private parts in a public place to urinate into a cup would constitute a violation of the statute. As we have emphasized, the common meaning and legal definition of health includes mental health, and precedents from other jurisdictions have recognized that health, when undefined by statute, includes mental health. See *United States* v. *Vuitch*, supra, 402 U.S. 72; *Harrison* v. *State*, supra, 644 N.E.2d 890.

The defendant also had fair warning that by requiring a child to expose himself for an unlawful purpose, he violated § 53-21. In *Velez*, the Appellate Court ruled that the defendant's undressing himself and young girls so as to reveal their genitals created a situation which was "likely to be harmful to their physical, emotional and moral well-being." *State* v. *Velez*, supra, 17 Conn. App. 199. Similarly, the Appellate Court also has held that

the creation of a situation in which children were posed in various stages of undress and in various types of clothing is prohibited by the first part of § 53-21. *State* v. *Palangio,* supra, 24 Conn. App. 305.

Finally, our decision is informed by the understanding that the fundamental purpose of the void for vagueness doctrine is to ensure fair warning in order to avoid traps for the innocent. *State* v. *Indrisano,* supra, 228 Conn. 802. The defendant has made no plausible argument, nor can we conceive of one, that he acted in reliance on the belief that his conduct was lawful, or that a person of ordinary intelligence would have no reason to know that he was engaging in prohibited conduct. Accordingly, we are unpersuaded that the defendant has met his heavy burden of proving that § 53-21, as applied to the circumstances of this case, is unconstitutionally void for vagueness.

### III

The defendant finally challenges the conclusion of the Appellate Court that the trial court properly and adequately instructed the jury on the elements of risk of injury to a child under § 53-21. Specifically, the defendant contends that the trial court (1) failed to inform the jury of the appropriate judicial gloss that has been placed on § 53-21, and (2) improperly instructed the jury to use the "common sense of the community" to determine whether the defendant had impaired the health or morals of the three children. We disagree.

At the close of evidence, the defendant submitted a request to charge that included three instructions: first, that the jury was required to find that the defendant had created a situation or permitted a child to be placed in a situation in which the child was likely to be exposed to deliberate, blatant physical abuse in order to have injured the health of the child; second, that the jury

was required to find that the defendant had subjected a child to lewd or indecent conduct of a sexual nature in order to have impaired the morals of the child; and third, that § 53-21 does not permit a conviction based on likely impairment to mental health alone. The trial court did not charge as the defendant had requested, and instead instructed the jury in accordance with the charge that the state had submitted.[7]

The defendant argued before the Appellate Court that the trial court had improperly charged the jury because the trial court divided the language of § 53-21 into three elements without informing the jury of the authoritative

[7] The trial court's instruction to the jury states in pertinent part: "The statute, therefore, in so far as it applies here, proscribes behavior that means deliberate indifference to, acquiescence in, or the creation of situations inimicable to the minor's 'moral or physical welfare.' The statute does not specify the situations being likely to impair the health and morals of a child. The common sense of the community as represented by you, the jury, as well as the sense of decency, propriety and morality which most people entertain is sufficient to apply the statute to any particular case.

"Further, under the statute it is not necessary that the defendant touch any part of the victim's body to be guilty of the offense. There are accordingly three elements to this offense. The first element, that the defendant's conduct was willful or unlawful. The word willful means doing a forbidden act purposely, in violation of the law. It means that the defendant acted intentionally in the sense that his conduct was voluntary and not inadvertent, not accidental.

"It is not necessary that the defendant intend to injure the child's health or morals, nor is it necessary that the conduct actually impair the health or morals of the child. Thus, proof of an actual impairment of health or morals is not required. The intentional creation of a potentially harmful situation to the child's health or morals by the defendant is all that is required. The focus of the statute is on the behavior of the defendant.

"The word unlawfully simply means that the defendant acted without any legal right to do so, or in violation of a legal duty imposed upon him. There is no requirement that the defendant utilize threats or physical conduct to act unlawfully. A failure to act when one is under a duty to do so will constitute unlawful conduct.

"The second element is that the defendant created, acquiesced in or was deliberately indifferent to a situation which is likely to be harmful to the victim's health or morals. Health is defined as a state of being hale, sound

judicial gloss construing the statute. In upholding the charge by the trial court, the Appellate Court concluded that "[n]either the statute nor judicial gloss establishes . . . that a threat of blatant physical abuse is an element under the first part . . . [that] a conviction under the first part does not . . . require proof . . . [of] indecent contact . . . [and] that a conviction [under § 53-21 can] be based solely on a likely impairment of mental health . . . ." (Citations omitted.) *State* v. *Payne,* supra, 40 Conn. App. 12.

We agree with the Appellate Court that the trial court properly instructed the jury on § 53-21. "[A] request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given." (Internal quotation marks omitted.) *State* v. *Cooper,* 182 Conn. 207, 211, 438 A.2d 418 (1980). " 'A jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present.' " *State* v. *Lemoine,* 233 Conn. 502, 509, 659 A.2d 1194 (1995). Because we have determined that health includes mental health for the purposes of

or whole in body, mind or soul, or well-being. Freedom from pain or sickness constitutes health. To impair means to make worse or to diminish in quality. Likely means in all probability or possibility.

"Morals is defined as of or concern with the judgment principles of right and wrong in relation to human action and character, teaching or exhibiting goodness or correctness of character and behavior, rules or habits of conduct with reference to standards of right and wrong. The focus is on whether the situation was such that harm to the health or morals was likely to [occur], as I've defined these terms to you.

"And again, you will recall from my earlier instruction with regard to this statute that actual injury to the health or morals is not an element of the offense, not required, nor does the jury have to find actual impairment of the health or morals of the child.

"And the third element is that the victim who was, who in this situation was less than sixteen years of age, that is, he had not yet reached his sixteenth birthday. And I think there was evidence in the case concerning his age. It was some less than sixteen at the time of this offense."

applying the first part of § 53-21, we conclude that the trial court properly charged the jury concerning the meaning of the term.

We reject, moreover, the defendant's reliance on *State* v. *Zwirn*, 210 Conn. 582, 556 A.2d 588 (1989), for the proposition that a conviction under the first part of § 53-21 requires a jury instruction that the defendant exposed the children to a threat of lewd or indecent contact. In *Zwirn*, we ruled that, when a prosecution is based on an act of physical contact that impairs the morals of a child under the second part of § 53-21, the state must prove that the act was committed in a sexually indecent manner. Id., 588. As the Appellate Court stated, however, this court decided *Zwirn* under the "acts" part of § 53-21, which, in contrast to the "situation" part of the statute, requires a defendant to have made physical contact with a child. *State* v. *Payne*, supra, 40 Conn. App. 12. The combined judicial gloss further indicates that the injury to morals in the first part of § 53-21 is not limited to morals put at risk by indecent sexual contact with private parts. See *State* v. *Zarick*, 227 Conn. 207, 212–13, 630 A.2d 565, cert. denied, 510 U.S. 1025, 114 S. Ct. 637, 126 L. Ed. 2d 595 (1993); *State* v. *Erzen*, 29 Conn. App. 591, 594–95, 617 A.2d 177 (1992); *State* v. *Palangio*, supra, 24 Conn. App. 304. Similarly, because a defendant need not touch a child in order to violate the first part of § 53-21, but can be prosecuted under that part for creating a situation likely to endanger the psychological or physical well-being of a child, we conclude that the first part of the statute is not limited to prosecuting injury to a child resulting from deliberate, blatant, physical abuse.

We also are not persuaded that the trial court's charge directing the jury to apply the common sense of the community to decide whether the defendant impaired the health and the morals of a child violated the defendant's right to due process of law by inviting the jury to make subjective moral determinations. The trial court's instruction to the jury in the present case was taken

from the Appellate Court's opinion in *State* v. *Erzen*, supra, 29 Conn. App. 599, where the trial court had instructed the jury to apply community standards to determine whether exposing oneself to a child would create a situation risking injury to the morals of a child. This court has upheld a charge allowing the jury to apply community standards in relation to the reach of obscenity laws under the first amendment of the United States constitution; *State* v. *Gagliardi*, 174 Conn. 46, 48–49, 381 A.2d 1068 (1977); and in applying the disorderly conduct statute. *State* v. *Indrisano*, supra, 228 Conn. 810. In both of these cases, this court ruled that a defendant is protected from individualized standardless decision making if the jury applies community standards, and that a jury that is apprised of the nature of allegedly offensive matters can properly evaluate the conduct against the community standard. The defendant has offered no persuasive reason why the logic of these cases should not control the present case.

The judgment of the Appellate Court is affirmed.

In this opinion CALLAHAN, C. J., and MCDONALD and PETERS, Js., concurred.

BERDON, J., dissenting. If we were writing on a clean slate, I would agree that "health," as used in the first part of General Statutes (Rev. to 1993) § 53-21,[1] includes mental health. It makes absolute common sense that the legislature intended to protect not only the physical, but also the mental, health of a child. Anything less would be simply absurd. Furthermore, a person of ordi-

---

[1] General Statutes (Rev. to 1993) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

nary intelligence would have no difficulty in determining that the term "health" as used in the statute clearly refers to both the physical and the mental health of a child. We are not, however, writing on a clean slate.

Section 53-21 consists of two parts. The first part prohibits persons from causing or permitting a child to be placed in a situation likely to injure the child's health or impair the child's morals. The second part prohibits persons from doing any act likely to impair the health or morals of any child.[2]

In *State* v. *Schriver*, 207 Conn. 456, 542 A.2d 686 (1988), this identical statute was before this court. In *Schriver*, this court stated: "On its face, § 53-21 fails to articulate a definite standard for determining whether the conduct of the defendant in this case is permitted or prohibited." Id., 461. Nevertheless, the court recognized that prior cases construing § 53-21 "provide an authoritative judicial gloss that limits the type of physical harm prohibited by § 53-21 to instances of deliberate, blatant abuse."[3] Id., 466. The state, however, argued that, even without substantial risk of physical injury, the defendant's conduct violated § 53-21 "because it created a cognizable risk of mental injury to the victim." Id. The unanimous court, which included two justices who are members of this panel, stated: "Any effort to extrapolate guidelines for the prosecution of persons accused of impairing the mental health of minors is hampered by

[2] This court has stated that § 53-21 proscribes two general types of conduct: "(1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the [child's] moral or physical welfare and (2) acts directly perpetrated on the person of the [child] and injurious to his moral or physical well-being." (Internal quotation marks omitted.) *State* v. *Perruccio*, 192 Conn. 154, 159, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984).

[3] In *Schriver*, the defendant had grabbed the thirteen year old female victim around the waist while she was delivering newspapers and said, "Don't worry, all I want to do is feel you." *State* v. *Schriver*, supra, 207 Conn. 457.

a trio of factors: The language of § 53-21 provides no tangible criteria; none of our prior cases adds a definitive gloss; and the state has not offered any workable standards. All that is absolutely known is that the irreducible minimum of any prosecution under the second part of § 53-21 is an act directly perpetrated on the person of a minor. . . . While such acts are normally prosecuted as threats to physical health . . . it is of course true that not every act directly perpetrated on a minor will threaten his or her physical health. Some acts might very well cause mental impairment without necessarily endangering the child's physical well-being. Under an appropriately tailored penal law, the legislature would have the power to proscribe such activity.

"Section 53-21, however, is not such a law. Without the aid of prior decisions to lend an authoritative gloss to the potentially limitless language of the statute, any effort to conform § 53-21 to the mandate of due process would necessarily entail a wholesale redrafting of the statute. We decline to undertake this activity, which is within the exclusive province of the legislature." (Citations omitted.) Id., 467–68.

Although I believe *Schriver* was wrongly decided, it placed on the statute a judicial gloss that cannot be cleansed in the absence of legislative action. "[W]e presume that the legislature is aware of our interpretation of a statute, and that its subsequent nonaction may be understood as a validation of that interpretation." (Internal quotation marks omitted.) *White* v. *Burns*, 213 Conn. 307, 333, 567 A.2d 1195 (1990). Despite the fact that in *Schriver* this court concluded that mental health does not fall within the reach of the second part of § 53-21, the legislature, during the nine years that have elapsed since *Schriver*, has not acted to criminalize conduct that poses a risk of injury to a child's mental health. I can reach no other conclusion than that the legislature has chosen to acquiesce in *Schriver*'s inter-

pretation of § 53-21. Indeed, several other states have specifically included mental health in their statutes governing risk of injury to children.[4]

The majority attempts to circumvent the conclusion in *Schriver* by determining that "health," as used in the first part of § 53-21, means something different than "health" means in the second part of the same statute. I disagree.

I recognize that it is well settled that the two parts of § 53-21 prohibit two different "general types of behavior." *State* v. *Perruccio*, 192 Conn. 154, 159, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984); *State* v. *Dennis*, 150 Conn. 245, 250, 188 A.2d 65 (1963). The first part prohibits the wilful or unlawful creation of a situation that is likely to injure the health of a child. In other words, "it is not necessary to have any touching of any part of the body to violate § 53-21; the creation of a prohibited situation is sufficient." *State* v. *Perruccio*, supra, 159–60; see *State* v. *Tyler-Barcomb*, 197 Conn. 666, 668–69, 500 A.2d 1324 (1985), cert. denied, 475 U.S. 1109, 106 S. Ct. 1518, 89 L. Ed. 2d 916 (1986) (failure to prevent boyfriend's abuse of child). Under the second part, however, there must be physical contact to violate that provision. Specifically, it prohibits "acts directly perpetrated on the person of

[4] See, e.g., Ark. Code Ann. § 5-27-204 (a) (Michie 1993) ("[a] person commits the offense of endangering the welfare of a minor in the second degree if he knowingly engages in conduct creating a substantial risk of serious harm to the physical or *mental welfare*" [emphasis added]); Cal. Penal Code § 273a (Deering Sup. 1997) ("[a]ny person who . . . willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or *mental suffering* . . . shall be punished" [emphasis added]); Haw. Rev. Stat. § 709-904 (2) (1993) ("[a] person commits the offense of endangering the welfare of a minor in the second degree if . . . the person knowingly endangers the minor's physical or *mental welfare*" [emphasis added]); N.Y. Penal Law § 260.10 (1) (McKinney Sup. 1997) ("[a] person is guilty of endangering the welfare of a child when . . . [h]e knowingly acts in a manner likely to be injurious to the physical, *mental* or moral welfare of a child" [emphasis added]).

the [child] and injurious to his moral or physical well-being." (Internal quotation marks omitted.) *State* v. *Perruccio*, supra, 159.

Although I agree that the two parts of § 53-21 prohibit two distinct types of behavior, I cannot agree that the term health has different meanings in the two parts of the statute. Under the reasoning of the majority, the second part of § 53-21 prohibits only physical harm, while the first part prohibits mental, as well as physical, harm. In my view, the risk of likely harm proscribed by the two parts of the statute is identical, or is at least a distinction without a difference, with respect to mental health. In light of this court's conclusion in *Schriver*, I fail to understand how two provisions that prohibit two essentially identical risks of harm can have two different meanings within the same statute.

The majority rationalizes its conclusion by arguing that because the first part of the statute includes the phrase "life or limb" in addition to "health," the term health in that part must also include mental health. The majority further argues that an interpretation of the statute to the contrary would render "health" superfluous in the first part of § 53-21. That is simply not so. As I previously pointed out, the first part of the statute prohibits conduct that amounts to causing or permitting a child to be placed in certain situations, and the second part prohibits acts directly perpetrated on the person of a child—both of which could involve the mental, as well as the physical, health of a child.

The strained opinion of the majority today, because of the *Schriver* gloss on § 53-21, deprives the defendant of his constitutional right to due process of law—the right to fair warning of the effect of § 53-21 and the guarantee against standardless law enforcement.[5]

---

[5] "That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement,

Although I disagree with *Schriver*'s conclusion that the combined judicial gloss of prior decisions renders the term health in the second part of § 53-21 to include only physical harm, I conclude that we are bound by that judicial gloss in interpreting the same term in the same manner in the first part of the statute. I would leave it to the legislature to amend the statute specifically to include risk of harm to the mental health of a child.

Accordingly, I dissent.

consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. . . ." (Citations omitted.) *Connally* v. *General Construction Co.*, 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926); *State* v. *Pickering*, 180 Conn. 54, 60, 428 A.2d 322 (1980).

The United States Supreme Court has emphasized, however, that "the more important aspect of the vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.' " *Kolender* v. *Lawson*, 461 U.S. 352, 357–58, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983). "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned* v. *Rockford*, 408 U.S. 104, 108–109, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972).