******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JORGE
CARRILLO PALENCIA
(AC 36612)

Gruendel, Alvord and West, Js.

*Argued November 17, 2015—officially released January 26, 2016*

(Appeal from Superior Court, judicial district of Stamford-Norwalk, Wenzel, J. [motions to disqualify]; Holden, J. [judgment; motion to open and set aside judgment].)

*Richard H. G. Cunningham*, for the appellant (defendant).

*Jacob L. McChesney*, special deputy assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Richard J. Colangelo, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Jorge Carrillo Palencia, appeals from the judgment of conviction, rendered after a court trial, of one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (1). On appeal, the defendant claims that (1) the evidence adduced at trial was insufficient to sustain his conviction and (2) the court improperly dismissed his postsentencing motion to open the judgment of conviction.[1] We disagree and, accordingly, affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the court reasonably could have found the following facts. The defendant attended a party with his wife, Wendy Garrido, on the evening of November 10, 2012. At that time, the defendant was in his late twenties. The victim was fourteen years old and a friend of the defendant's family.[2] The defendant consumed alcohol at the party and danced with the victim. While they were dancing, a physical altercation ensued between the victim's brother and the defendant. The defendant and Garrido left the party soon thereafter.

Once home, Garrido went to sleep. The defendant, who was intoxicated, exited his Stamford home and received a phone call from the victim minutes later. He then met with the victim, who had been at her sister-in-law's home a few blocks away, and transported her by taxi to a hotel in Norwalk.[3] Surveillance photographs taken at the hotel, which were admitted into evidence at trial, show the victim and the defendant with their arms around each other as they checked in, and later as they walked to their room, at approximately 1 a.m. on November 11, 2012. That room had only one bed. Once at the hotel room, the defendant placed a "do not disturb" sign outside the door.

At approximately 4 a.m. that morning, the victim's family contacted the Stamford Police Department (department) to report that she was missing. Throughout the day, officers unsuccessfully attempted to contact the defendant, sending text messages and leaving voice messages on his phone. The officers requested that the defendant bring the victim to the department. The defendant did not respond to those queries.

During the afternoon of November 11, 2012, the defendant and the victim travelled from the Norwalk hotel to a shopping mall in Trumbull. Surveillance photographs from a department store, which also were admitted into evidence, depict the victim with her arms wrapped around the defendant. While at the shopping mall, the defendant purchased items of clothing for the victim, including underwear. After grabbing a bite to eat, the defendant and the victim took another taxi ride to a nearby hotel, where they spent the night.

The victim returned to Stamford on November 12.

2012, arriving at her sister-in-law's home at approximately 8 p.m. When Officer Jeffrey Hugya of the department met with her soon thereafter, he observed a mark on her chest that "appeared to be a hickey."[4] The defendant subsequently was arrested and charged, in docket number CR-12-0178925, with one count of risk of injury to a child in violation of § 53-21 (a) (1).

In April, 2013, the department was contacted by officials at the victim's school, who, according to Officer Brian Butler of the department, "believed that [the victim] was involved in an inappropriate relationship" with the defendant. They notified the department that the victim had stated that she would not be returning to school because she was leaving the country with the defendant. During their investigation of that complaint, officers found a handwritten document in the victim's notebook that contained a drawing of two hearts around the message, "I love you Jorge Alberto Carrillo Palencia I love you."

The officers interviewed the defendant, who was accompanied by legal counsel, at police headquarters. When they asked to see his cell phone, the defendant stated that he did not have it with him, but would furnish it in the coming days. After that interview concluded, the defendant deleted numerous photographs of the victim from his phone. Several days later, the defendant surrendered the phone to the police and provided consent to search its contents. At that time, he informed officers that he accidentally had dropped it into a bucket of water the day after being interviewed by police. He further stated that the phone remained in the bucket of water for approximately thirty minutes. When officers inquired how he knew it had been that length of time, the defendant smirked.

The officers subsequently conducted a forensic investigation on the defendant's phone. Officer Mark Sinise, a computer forensic examiner with the department, testified that, although they were able to extract moisture from the phone by placing it in a bag of rice, the water exposure had destroyed its battery. Upon replacing the battery, however, the phone powered up and Sinise was able to examine its contents. Sinise discovered thirty-three photographs of the victim on the defendant's phone. Those photographs, which were admitted into evidence, depict the victim in various states of undress. The victim is fully naked in some photographs, with her breasts and buttocks exposed. As a result, the defendant was charged, in docket number CR-13-0180270, with one count of risk of injury to a child in violation of § 53-21 (a) (1) and one count of possession of child pornography in the third degree in violation of General Statutes § 53a-196f (a).

The defendant's two criminal cases were joined for a court trial that commenced in the fall of 2013. After the state rested its case-in-chief, the court granted the

defendant's motion for a judgment of acquittal on the possession of child pornography charge. The court reasoned that although the photographs found on the defendant's phone featured the victim in "a nude position," they did not constitute child pornography under the law, as her "pubic areas were not exposed."[5] When the trial concluded, the court found the defendant guilty of risk of injury to a child with respect to the events of November, 2012. The court acquitted the defendant of the risk of injury charge with respect to the events of April, 2013. It thereafter sentenced the defendant to a term of five years incarceration, execution suspended after fourteen months, followed by a three year term of probation. This appeal followed.

## I

The defendant claims that the evidence adduced at trial was insufficient to sustain his conviction of risk of injury to a child. We disagree.

The standard of review for claims of evidentiary insufficiency is well established. "In reviewing a sufficiency of the evidence claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [court, as finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the [trial court] if there is sufficient evidence to support [its] verdict." (Internal quotation marks omitted.) *State* v. *Allan*, 311 Conn. 1, 25, 83 A.3d 326 (2014). In applying that test, "we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [court's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Stephen J. R.*, 309 Conn. 586, 594, 72 A.3d 379 (2013).

"[T]he general purpose of § 53-21 is to protect the physical and psychological well-being of children from the potentially harmful conduct of adults." *State* v. *Payne*, 240 Conn. 766, 771, 695 A.2d 525 (1997), overruled in part on other grounds by *State* v. *Romero*, 269 Conn. 481, 490, 849 A.2d 760 (2004). A person violates § 53-21 (a) (1) when he or she "wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . ." That statutory provision "prohibits two different types of behavior: (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the [child's] . . . welfare . . . and (2) acts directly perpetrated on

the person of the [child] and injurious to his [or her] moral or physical well-being. . . . Thus, the first part of § 53-21 . . . prohibits the creation of *situations* detrimental to a child's welfare, while the second part proscribes injurious *acts* directly perpetrated on the child. . . . Those two types of behavior encompassed within § 53-21 (a) (1) have been termed the situation and act prongs." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *St. Cyr*, 100 Conn. App. 189, 200, 917 A.2d 578, cert. denied, 282 Conn. 915, 924 A.2d 140 (2007).

The information filed by the state in docket number CR-12-0178925 alleged that the defendant placed the victim in a situation that was likely to impair both her health and her morals. On appeal, the defendant claims that the evidence was insufficient to establish the latter. It nonetheless remains that § 53-21 (a) (1) also proscribes conduct that places a child in situations likely to injure her health.

We conclude that the evidence amply substantiates a finding that the defendant caused the victim to be placed in such a situation. The testimonial and documentary evidence submitted at trial indicates that the defendant met the fourteen year old victim in the middle of the night and transported her to an out-of-town hotel without providing notice to either her parents or his wife. While at that hotel and a department store the following day, the victim and the defendant had their arms around each other. Despite repeated telephone calls, voicemails and text messages, the defendant did not respond in any manner to law enforcement officials or their request to return the victim to the department. As police investigated her family's missing person report, the defendant took the victim shopping and purchased underwear for her. The defendant then took the victim to a second hotel in yet another town, where the two again spent the night together alone in a hotel room. Furthermore, months after this episode, officials at the victim's school grew so concerned that she was engaged in an inappropriate relationship with the defendant that they contacted the department. During their subsequent investigation, officers learned that the victim had proclaimed her love for the defendant in her notebook and had announced that she was preparing to leave the country with him.

As our Supreme Court has held, "the term 'health,' as used in the 'health is likely to be injured' language of § 53-21, includes mental health as well as physical health." *State* v. *Scruggs*, 279 Conn. 698, 713–14, 905 A.2d 24 (2006). In light of the foregoing, the court reasonably could conclude that the defendant placed the victim in a situation that was likely to injure her mental health. Significantly, the court had before it evidence of the child's fragile mental state. As the defendant testified at trial, prior to the events in question, the

victim "always told me that she . . . felt desperate, lonely, sad. In fact, she once even told me that she wanted to die and that she was gonna take some pills. . . . Since I've met her, she's always said the same to me." The defendant's conduct in absconding with the victim to hotels for two days plainly risked injury to her mental health, as further reflected by the fact that she subsequently memorialized her love for him and planned to leave the country—and presumably her family—with him. In addition, the court reasonably could infer from the surveillance photographs of the victim with her arms around the defendant and the numerous nude photographs of the victim found on the defendant's cell phone that her relationship with the defendant was a very close one.

The defendant nevertheless argues that the court, in sentencing the defendant, found that there was no evidence that the defendant actually engaged in sexual relations with the victim, which he claims is "dispositive" of his evidential insufficiency claim.[6] We do not agree. Section § 53-21 is titled "Injury *or* risk of injury to, or impairing morals of, children." (Emphasis added.) To obtain a conviction under its situation prong, the state was not required to prove that sexual conduct transpired or that the child in question sustained an injury.[7] See *State* v. *Gewily*, 280 Conn. 660, 669, 911 A.2d 293 (2006) ("actual injury is not an element of the 'situation' prong of § 53-21 [a] [1]"), and cases cited therein. With particular respect to the potential for harm to the mental health of a child, "the fact finder is not required to make a determination as to the precise nature or severity of the injury . . . rather, the fact finder need only decide whether the accused placed the child in a situation that was likely to be psychologically injurious to that child." (Citation omitted; internal quotation marks omitted.) Id., 669. On the basis of the evidence presented at trial, the court reasonably could conclude that the defendant's conduct on November 11 and 12, 2012, placed the victim in such a situation.

Furthermore, our case law recognizes that a child's health may be impaired by conduct that separates a child from her parents. As our Supreme Court has explained in analyzing a challenge to a conviction under the situation prong of § 53-21 (a) (1), "[u]ninterrupted home life comports . . . with each child's biological and psychological need for unthreatened and unbroken continuity of care by [her] parents. . . . [T]here is little doubt that breaches in the familial bond will be detrimental to a child's well-being." (Citations omitted; internal quotation marks omitted.) Id., 671. For two days, that bond was breached, as the defendant transported the victim to out-of-town hotels while refusing to respond to the repeated queries of law enforcement officials—queries instigated by the missing person report filed by her family. For two days, the fourteen year old child was under the care and custody of an

adult twice her age. On two consecutive days, she spent the night alone in hotel rooms with that adult.

Viewing the evidence in the light most favorable to sustaining the verdict, the court reasonably could conclude that the defendant placed the victim in a situation that was likely to injure her health.[8] The cumulative effect of the evidence, including reasonable inferences drawn therefrom, was sufficient to justify the court's determination that the defendant was guilty of risk of injury to a child.

II

The defendant also claims that the court improperly dismissed his postsentencing motion to open the judgment of conviction. We do not agree.

The following additional facts are relevant to this claim. The court rendered its verdict of guilty on one count of risk of injury to a child in violation of § 53-21 (a) (1) on November 14, 2013. On February 20, 2014, the court sentenced the defendant to a term of five years incarceration, execution suspended after fourteen months, followed by a three year term of probation. At that time, the court committed the defendant to the care and custody of the Commissioner of Correction. On March 7, 2014, the defendant filed a motion to open, which requested that his judgment of conviction "be set aside and reopened and judgment enter for acquittal/ dismissal or for a new trial . . . ." Following a hearing, the court dismissed the motion for lack of jurisdiction. The defendant now challenges the propriety of that determination.

"Questions regarding subject matter jurisdiction are purely legal in nature and subject to plenary review. . . . The Superior Court is a constitutional court of general jurisdiction. In the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law. . . . It is well established that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment before the sentence has been executed. . . . This is so because the court loses jurisdiction over the case when the defendant is committed to the custody of the commissioner of correction and begins serving the sentence. . . . [T]he jurisdiction of the sentencing court terminates once a defendant's sentence has begun, and, therefore, that court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act." (Citations omitted; internal quotation marks omitted.) *State* v. *Ramos*, 306 Conn. 125, 133–34, 49 A.3d 197 (2012); see also *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 37, 779 A.2d 80 (2001).[9]

The defendant has not identified any express authorization under which the court could act on his March 7, 2014 motion. To the extent that the defendant's motion

sought an acquittal on the risk of injury charge, the court plainly lacked jurisdiction over that request. *State* v. *Luzietti*, 230 Conn. 427, 432, 646 A.2d 85 (1994) (trial court lacks jurisdiction to grant motion for judgment of acquittal "when the defendant is committed to the custody of the commissioner of correction and begins serving the sentence"). In addition, even if we were to construe the defendant's filing as a motion for a new trial pursuant to Practice Book §§ 42-53 and 42-54, he could not prevail. Those provisions authorize "the trial court in a criminal case to entertain a motion for a new trial . . . only *prior to* the termination of its jurisdiction upon sentencing." (Emphasis added.) *State* v. *Bruno*, 132 Conn. App. 172, 178, 30 A.3d 34 (2011), cert. denied, 303 Conn. 919, 34 A.3d 393 (2012). The defendant's motion in the present case was filed more than two weeks after he was sentenced. Lastly, we note that the defendant's motion states that it is brought pursuant to Practice Book §§ 61-6 and 63-1. Those rules of appellate procedure do not concern in any manner the jurisdiction of the trial court to act on a postsentencing motion, nor does the defendant so argue in this appeal. We therefore conclude that the court properly determined that it lacked jurisdiction over the defendant's March 7, 2014 motion to open.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant also challenges the propriety of various discretionary determinations rendered by the court. Specifically, he claims that the court abused its discretion in (1) striking the testimony of the victim following her repeated refusal to answer questions on cross-examination, (2) denying the defendant's motion to reopen the evidence after the parties had rested and had made closing arguments to the court, (3) denying the defendant's motions to disqualify the trial judge, and (4) sentencing the defendant. We have carefully considered those claims and conclude that they do not merit substantial discussion. Our review of the record reveals no abuse of the court's ample discretion.

[2] In accordance with General Statutes § 54-86e and our policy of protecting the privacy interests of victims of the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained.

[3] At trial, the defendant testified that the victim contacted him because she was afraid of her brother and that he took her to the hotel in Norwalk to protect her. Although the defendant on appeal claims that the court was obligated to credit that testimony, he is mistaken. The trial court, as sole arbiter of credibility, was entitled to accept or reject the defendant's testimony in whole or in part. See *State* v. *Morelli*, 293 Conn. 147, 160, 976 A.2d 678 (2009). The court likewise was free to draw reasonable inferences from the evidence before it. *State* v. *Crespo*, 317 Conn. 1, 17, 115 A.3d 447 (2015).

[4] "A hickey is a temporary red mark on the skin (as one produced by biting and sucking)." (Internal quotation marks omitted.) *State* v. *Cazares-Mendez*, 350 Or. 491, 498 n.4, 256 P.3d 104 (2011).

[5] " 'Child pornography' means any visual depiction . . . involv[ing] the use of a person under sixteen years of age engaging in sexually explicit conduct . . . ." General Statutes § 53a-193 (13). At trial, the defendant had stipulated that the photographs recovered from his cell phone were of the victim and that she was under the age of sixteen at all times. General Statutes § 53a-193 (14) (E) defines "sexually explicit conduct" in relevant part as the "lascivious exhibition of the genitals or pubic area of any person."

[6] Although the court acknowledged at sentencing that there was "no objective evidence" that the defendant engaged in sexual relations with the victim, the court nevertheless stated that "it does strain credibility."

[7] The defendant's claim that "in no case reported, trial or appellate, has

[§ 53-21 (a) (1)] been applied where there has been no sexual offense or physical danger" is untenable. See, e.g., *State* v. *Gewily*, 280 Conn. 660, 672, 911 A.2d 293 (2006) (evidence that defendant relocated child to foreign country and deprived child contact with custodial parent sufficient to prove violation of § 53-21 [a] [1]); *State* v. *Payne*, supra, 240 Conn. 776 (holding that § 53-21 [a] [1] "prohibits conduct that places a child in a situation that poses a risk of injury to the child's mental health"); *State* v. *Fagan*, 92 Conn. App. 44, 54, 883 A.2d 8 (evidence that defendant possessed cocaine in presence of twelve year old child sufficient "to prove that he caused or permitted the twelve year old child to be placed in a situation in which his morals were likely to be impaired under § 53-21 [a] [1]"), cert. denied, 276 Conn. 924, 888 A.2d 91 (2005); *State* v. *Padua*, 73 Conn. App. 386, 393, 808 A.2d 361 (2002) ("exposing a child, old enough to appreciate what was transpiring, to selling [narcotics] might be considered as endangering the morals of that child"), rev'd in part on other grounds, 273 Conn. 138, 869 A.2d 192 (2005).

[8] In light of our conclusion that the evidence supports a finding that the defendant violated § 53-21 (a) (1) by placing the victim in a situation in which her health was likely to be injured, we do not consider in much detail the question of whether he also placed her in a situation where her morals were likely to be impaired. It suffices to say that the evidence discussed in this opinion also substantiates such a determination.

[9] Although the defendant in his reply brief to this court submits that this precedent "should not be followed but should be overturned," we are not the proper audience for such claims. As an intermediate body, it is axiomatic that this court is "bound by Supreme Court precedent and [is] unable to modify it . . . . [W]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions." (Citation omitted; internal quotation marks omitted.) *State* v. *Smith*, 107 Conn. App. 666, 684–85, 946 A.2d 319, cert. denied, 288 Conn. 902, 952 A.2d 811 (2008). Proper regard for this court's role as an intermediate appellate tribunal precludes our reconsideration of the aforementioned precedent of this state's highest court.