# STATE OF CONNECTICUT *v.* ELICIO ROMERO
## (SC 17082)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued February 19—officially released June 8, 2004

*Martin Zeldis*, senior assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Cornelius P. Kelly*, senior assistant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. The defendant, Elicio Romero, appeals[1] from the trial court's judgment of conviction, rendered after a jury trial, of one count of sexual assault in the

---

[1] The defendant appealed to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

first degree in violation of General Statutes § 53a-70 (a) (2), and two counts of risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (2).[2] On appeal, the defendant claims that the trial court improperly: (1) instructed the jury that, in order to convict the defendant of risk of injury to a child, it had to find that the defendant's conduct was " 'likely to impair the health or morals' " of the victim, and that the term "likely" was to be understood as meaning that it was " 'possible' " that the defendant's conduct had impaired the victim's health or morals; (2) admitted evidence of certain prior uncharged sexual misconduct by the defendant; and (3) instructed the jury that the state had to demonstrate that the crimes had been committed prior to the date of the information within the relevant statute of limitations, but not necessarily on the dates as alleged in the information. We affirm the judgment of the trial court.

The state had charged the defendant with three counts of sexual assault in the first degree, one count of attempted sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) and 53a-70 (a) (2), two counts of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (2), and three counts of risk of injury to a child. During the trial, all of the counts, except for one count of sexual assault in the first degree and two counts of risk of injury to a child, either were dismissed or withdrawn. Following jury deliberations, the defendant was convicted on the three remaining counts, and the trial court rendered judgment thereon. The defendant then was sentenced to a term of twenty years imprisonment, execution sus-

---

[2] General Statutes (Rev. to 1999) § 53-21 provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony."

pended after thirteen years, with fifteen years proba-
tion, and mandatory lifetime sex offender registration.
This appeal followed.

The jury reasonably could have found the following
facts. At the time of trial in May, 2002, D, the victim,
was a ten year old boy living in Waterbury with his
mother, E.[3] From October, 1999, until March, 2000, the
time period of the defendant's sexual abuse of D, he
occasionally had traveled to Bridgeport in order to visit
the defendant, believing him to be his grandfather.[4]
While visiting the defendant's home, there were occa-
sions on which D was left alone with the defendant.
On three such instances during the relevant time period,
the defendant had led D into the defendant's bedroom
and, in D's words, had done "something that [D]
didn't like."

On these occasions, the defendant had locked his
bedroom door and had told D that if he loved the defen-
dant, he would not reveal what transpired in the bed-
room because if D did tell someone, the defendant
would go to jail. The defendant then had removed D's
pants and underwear, as well as his own, and had
applied a product that the defendant used in his hair
to his "private part." Subsequently, while both were on
the defendant's bed and the defendant was behind D,
the defendant had inserted his private part into D's
"behind" and had begun "moving."

---

[3] In accordance with General Statutes § 54-86e, as amended by Public
Acts 2003, No. 03-202, § 15, and this court's policy of protecting the privacy
interests of victims in sexual abuse matters, we decline to identify the victim
by name, or others through whom the victim's identity may be ascertained.

[4] The evidence presented at trial demonstrated the murkiness of the genea-
logical history of the defendant's family. E testified that she had been raised
in the defendant's household and, for a considerable period of time, believed
that the defendant was her father. Consequently, D believed that the defen-
dant was his maternal grandfather and testified that he had never met his
father. Prior to trial, however, blood testing was performed on the defendant,
E and D. From these analyses, it was determined that the defendant was
not the biological father of E, but instead was the biological father of D.

During these encounters, the defendant also had touched D's private part and had forced D to touch the defendant's private part. Beyond this physical abuse, while D was alone with the defendant, the defendant also had played "nasty movies" on the television in his bedroom, repeating his instructions to remain silent regarding the activities. Ultimately, in March, 2000, D revealed the defendant's sexual abuse to his baby-sitter, L, and to E.

At trial, the defendant denied abusing D and advanced a theory of defense that E had fabricated the allegations in retaliation for the defendant's previous threats to inform the department of children and families of E's physical abuse and neglect of D. In that regard, Carmen Rivera[5] and the defendant testified that the defendant had confronted E about her treatment of D, expressing his concerns over her degree of discipline, and that E had responded by threatening that, if the defendant went to the authorities, E would ensure that the defendant also faced jail time. It was after this confrontation, the defendant testified, that the allegations of his sexual abuse of D had arisen. Following its deliberations, the jury convicted the defendant of one count of sexual assault in the first degree and two counts of risk of injury to a child.[6]

I

The defendant first claims that certain of the trial court's instructions to the jury improperly defined the

---

[5] Rivera was the defendant's longtime companion with whom he had conceived a child. Although Rivera and the defendant lived with one another during the time period of the abuse, the two occupied separate bedrooms.

[6] The sexual assault in the first degree count on which the defendant was convicted had charged that he had engaged in anal intercourse with a child under the age of thirteen. With regard to the two risk of injury counts, one count was based on the defendant having had indecent contact with the intimate parts of a child under the age of sixteen, and the other count was based on the defendant having subjected a child under the age of sixteen to contact with the defendant's intimate parts.

term "likely" in § 53-21 (2) as meaning *"possible* or probable," thereby diluting the state's burden of proof as to whether the defendant's conduct was "likely to impair" D's health or morals and violating the defendant's constitutional right to due process of law.[7] (Emphasis added.) In the defendant's view, the commonly understood meaning of the term "likely" is probable, and the trial court's definition of "possible" improperly lessened its meaning for the jury.

The state, to the contrary, first contends that the trial court's instruction as to the meaning of the term "likely," which apparently was derived from the model jury instructions found in J. Pellegrino, Connecticut Selected Jury Instructions: Criminal (3d Ed. 2001) § 7.9 B, pp. 355–57, was proper. Alternatively, the state claims that, even if the instruction was improper, it was harmless because, in considering the entire charge, it is not reasonably possible that the jury was misled by the impropriety. We conclude that the trial court improperly instructed the jury that the term "likely" in § 53-21 (2) was to be understood as having a meaning of "possible." We agree with the state, however, that there is no reasonable possibility that this instructional impropriety, when evaluated in light of the entire charge, misled the jury.

---

[7] The defendant's brief does not indicate whether he relies upon the due process component of either the federal or state constitution, or both. To the extent that the defendant relies upon his state constitutional right to due process of law; Conn. Const., art. I, § 8; we decline to review the claim " 'because [he] has failed to provide an independent analysis of the state constitutional issue.' " *State* v. *Coney*, 266 Conn. 787, 790–91 n.4, 835 A.2d 977 (2003). We therefore view the defendant's claim that the challenged instructions improperly reduced the level of proof necessary to convict the defendant, as a claim arising under the fourteenth amendment to the United States constitution. See *State* v. *Austin*, 244 Conn. 226, 237–38 n.11, 710 A.2d 732 (1998). The fourteenth amendment to the United States constitution, § 1, provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

Preliminarily, we note that the defendant neither filed a request to charge nor objected to the jury instructions that ultimately were given by the trial court. "It is well established that [t]his court is not bound to review claims of error in jury instructions if the party raising the claim neither submitted a written request to charge nor excepted to the charge given by the trial court." (Internal quotation marks omitted.) *State* v. *Davis*, 261 Conn. 553, 562, 804 A.2d 781 (2002). Accordingly, the defendant now seeks to prevail on this claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[8] The defendant's claim is reviewable[9] because he has satisfied the first two prongs of *Golding* in that the record is adequate for our review and the defendant's claim that the trial court improperly instructed the jury as to an element of a charged offense is of constitutional dimension. See *State* v. *DeJesus*, 260 Conn. 466, 472–73, 797 A.2d 1101 (2002). We conclude, however, that the defendant's claim fails under the third prong of *Golding*.

We set forth the standard that governs our analysis of the defendant's claim. "The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which they might find to be estab-

---

[8] In *Golding*, this court held "that a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." *State* v. *Golding*, supra, 213 Conn. 239–40.

[9] We previously have stated that "[t]he first two [prongs of *Golding*] involve a determination [as to] whether the claim is reviewable; the second two . . . involve a determination [as to] whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Whitford*, 260 Conn. 610, 621, 799 A.2d 1034 (2002).

lished . . . ." (Internal quotation marks omitted.) *State* v. *Davis*, supra, 261 Conn. 563. "When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety . . . and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party . . . ." (Internal quotation marks omitted.) *State* v. *Delgado*, 247 Conn. 616, 625, 725 A.2d 306 (1999). In this inquiry we focus on the "substance of the charge rather than the form of what was said" not only in light of the entire charge, but also within the context of the entire trial. (Internal quotation marks omitted.) *State* v. *Walton*, 227 Conn. 32, 65, 630 A.2d 990 (1993). Moreover, as to unpreserved claims of constitutional error in jury instructions, we have stated that "under the third prong of *Golding*, [a] defendant may prevail . . . only if . . . it is reasonably possible that the jury was misled . . . ." (Internal quotation marks omitted.) *State* v. *Schiappa*, 248 Conn. 132, 176–77, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999).

In its final charge, the trial court stated: "Ladies and gentlemen, the state does not have to prove that the defendant actually did impair the health or morals of the child. Rather, the state must show that the defendant's behavior was likely to impair the health or morals of the child. *Likely means in all probability or possibility.* Thus, the state must show that it was *possible or probable* that the sexual and indecent behavior of the defendant would injure or weaken the child's health or morals. There is no requirement that the state prove actual harm to the child's health or morals." (Emphasis added.) The trial court provided this instruction to the jury twice—once for each risk of injury count.

The record does not disclose the source for this definition of the term "likely" by the trial court.[10] The parties now agree, however, that the trial court based this portion of its charge on the text of the model jury instructions contained in J. Pellegrino, supra, § 7.9 B, pp. 355–57. In the portion of this text providing a set of model jury instructions for General Statutes § 53-21 (a) (2), the current codification of the former § 53-21 (2), the author states that "[l]ikely [as used in § 53-21 (a) (2)] means in all probability or possibility." Id., p. 356. As authority for this definition, he cites to this court's decision in *State* v. *Payne*, 240 Conn. 766, 780–81 n.7, 695 A.2d 525 (1997). J. Pellegrino, supra, p. 359 n.10.[11]

In *Payne*, the defendant was convicted, inter alia, of risk of injury to a child in violation of General Statutes (Rev. to 1993) § 53-21, now codified at General Statutes § 53-21 (a) (1).[12] On appeal, the defendant raised claims that included whether the trial court improperly had instructed the jury on § 53-21 (a) (1) by: (1) charging the jury as to the three elements of the statute without providing the jury with the judicial gloss construing the statute; and (2) directing the jury, in the determination

---

[10] The defendant did not file a request to charge and the state's request to charge did not include a definition of the statutory term "likely" as "possible or probable."

[11] In the endnotes to his collection of jury instructions regarding § 53-21 (a) (2), Pellegrino does qualify parenthetically this citation to *Payne* by indicating that this definition of the term "likely" was the "trial court definition." J. Pellegrino, § 7.9, p. 359 n.10.

[12] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony . . . ."

For ease of reference, we refer to the statutory provision at issue in *Payne* as it is currently codified at § 53-21 (a) (1).

as to whether the defendant had impaired the health or morals of the victims, to apply the common sense of the community. *State* v. *Payne,* supra, 240 Conn. 779–83. We rejected all of the defendant's claims and, accordingly, we affirmed his judgment of conviction. Id., 768–69, 783.

Preceding our analysis into the defendant's jury instruction claim, we set forth, in a footnote, a recitation of relevant portions of the trial court's charge to the jury. Id., 780 n.7. In so doing, we repeated the trial court's instruction that: " 'The second element [of § 53-21 (a) (1)] is that the defendant created, acquiesced in or was deliberately indifferent to a situation which is likely to be harmful to the victim's health or morals. . . . Likely means in all probability or possibility.' " Id. Having detailed the trial court's instructions, we then went on to consider the defendant's challenges to other portions of the charge, portions entirely unrelated to the trial court's definition of the term "likely." Id., 779–83.

Contrary to the state's assertion in its brief, our recitation of the instructions that had been given by the trial court in *Payne* does not carry the precedential imprimatur of this court with regard to the meaning of the term "likely" in § 53-21 (a). This language simply was used in order to provide a context for our analysis of the propriety of certain other unrelated portions of the trial court's instructions and our decision in *Payne* in no way reflected upon the meaning of the term "likely." Consequently, to the extent that *Payne* has been interpreted as a sanction for the meaning of the term "likely" in § 53-21 (a) as either "possibly" or "in all possibility," it is hereby disavowed.

This disclaimer, however, does not put an end to our inquiry. Although *Payne* does not support any definition of the term "likely" in § 53-21 (a), it does not follow necessarily that the trial court instructed the jury

improperly on the meaning of the term. Consequently, we must engage in a separate inquiry as to whether the trial court's instructions that "[l]ikely means in all probability or possibility . . . [and] the state must show that it was possible or probable" were improper. We conclude that the term "likely," as used in § 53-21 (a), cannot be understood fairly to encompass a meaning of either "possible" or "in all possibility" and, therefore, the trial court's instructions to the contrary were improper.

The term "likely" and the phrase "likely to impair" are defined neither in § 53-21 (a), nor in any related provision of our General Statutes. In the absence of statutory guidance as to the meaning of a particular term, it is appropriate to look to its dictionary definition in order to discern its meaning in a given context. *Lombardo's Ravioli Kitchen, Inc.* v. *Ryan*, 268 Conn. 222, 232, 842 A.2d 1089 (2004). Our review of such sources reveals that, depending on the context, the term "likely" most commonly is understood as an adjective that denotes when particular subject matter will probably come to be or when its chances of realization are more probable than not. Oxford English Dictionary (2d Ed. 1989) (defining "likely" as something "that looks as if it [will] happen, be realized, or prove to be what is alleged or suggested"); The American Heritage Dictionary of the English Language (3d Ed. 1992) (defining "likely" as "[p]ossessing or displaying the qualities or characteristics that make something probable").

In contrast, dictionary sources indicate that the term "possible," again, depending on the context, primarily has a lower degree of probability or certitude of realization. Oxford English Dictionary, supra (defining "possible" as "[t]hat may be [i.e. is capable of being]; that may or can exist, be done, or happen"); The American Heritage Dictionary of the English Language, supra (defining "possible" as something that is *"capable* of

happening, existing or being true" [emphasis added]). The common understanding of the term "likely" therefore ordinarily conveys a degree of certitude as to realization that is in conformity with a definition of "probable," but that counsels against an understanding of its meaning as merely "possible." Indeed, at oral argument before this court, the state conceded that it would be "hard-pressed" to contend that the term "likely" reasonably may be understood as meaning "possible." Accordingly, with no persuasive argument to the contrary, the trial court's jury instructions that the term "likely" was to be understood as meaning "in all probability or possibility" and "possible or probable," were improper.

Having concluded the jury instructions were improper, we turn then to a consideration, under the third prong of *Golding*, of whether there exists a reasonable possibility that the jury was misled by these improprieties. *State* v. *Schiappa*, supra, 248 Conn. 176–77. Following the consideration of the improprieties within the context of the entire charge, we are satisfied that there is no reasonable possibility that the jury was misled by the trial court's instructional improprieties.

Viewing the charge as a whole, we note that the trial court provided the jury with a thorough explanation of the concept of reasonable doubt and the state's burden of proving each element of each charge beyond all reasonable doubt. We further note that the trial court's instructions reduced § 53-21 (2) to three elements, reiterating the state's burden as to each of the elements. In this regard, the trial court instructed that the state had to prove beyond reasonable doubt that: (1) D was under the age of sixteen at the time of the criminal acts; (2) the defendant had contact with D's intimate parts and, in connection with the second risk of injury count, that the defendant had subjected D to contact

with the defendant's intimate parts;[13] and (3) such contact with intimate parts took place in a sexual and indecent manner that was likely to impair D's health or morals.[14]

The defendant challenges only those portions of the charge regarding the third element in which the term "likely" was defined. The defendant therefore raises no challenge to the trial court's instructions regarding the sexual or indecent manner by which the jury had to find that the defendant either had contact with D's intimate parts or subjected D to contact with the defendant's intimate parts. See footnotes 13 and 14 of this opinion. Given the jury's verdict, and the unchallenged propriety of these instructions, it necessarily follows that the jury concluded that sexual or indecent contact between the defendant and D took place. Once the jury determined that the anal intercourse and mutual sexual touching took place, as described by D, it is difficult to imagine a finding that this conduct could *not* be deemed likely—in the context of probably—to impair D's morals. Put another way, the defendant has made no claim, and we can conceive of no justification for one, that the defendant's conduct in relation to his abuse of D, conduct which the jury found to have occurred, is *not* conduct that is "likely to impair" the health or morals of a child. As a result, we cannot conclude that the jury reasonably could have been misled by the trial court's improper instruction as to the meaning of the term "likely."

[13] Specifically, the trial court instructed the jury as follows: "Intimate parts, inasmuch as it pertains to this case, means the genital area, groin, inner thighs, anus, buttocks. Contact means the touching of intimate parts. There need not be a touching of all the intimate parts. It is sufficient if only one of the intimate parts was touched."

[14] The trial court instructed the jury as follows: "The contact with the intimate parts must have taken place in a sexual or indecent manner as opposed to an innocent or an accidental, inadvertent or reflexive touching. Sexual means having to do with sex. And indecent means offensive to good taste or public morals."

In addition, focusing on the improprieties themselves demonstrates that it is not reasonably possible that the jury was misled by the improper instructions. On their own footing, the two occasions on which the trial court improperly defined the term "likely" as "possible" were accompanied by its proper definition of the term as "probable" or "in all probability."[15] These accurate instructions minimized the potential harm flowing from the trial court's improper instructions on the meaning of the term "likely." Viewing the charge as a whole, there does not exist a reasonable possibility that the jury was misled by the trial court's instructions as to the meaning of the term "likely" in § 53-21 (2). Accordingly, the defendant cannot prevail on his unpreserved constitutional claim under *Golding*.

II

The defendant next claims that the trial court improperly admitted into evidence, pursuant to § 4-5 of the Connecticut Code of Evidence and in order for the state to show a common plan or scheme of sexual abuse, E's testimony that the defendant had sexually abused her while she was a child. Specifically, the defendant claims that, as compared to the abuse of D, this evidence of prior misconduct was too remote in time and too dissimilar in character to fall within the ambit of the common plan or scheme exception that allows evidence of prior misconduct to be admitted for purposes other than the demonstration of a defendant's bad character or criminal propensity. In the alternative, the defendant

---

[15] The defendant contends that, because the trial court's instructions used the disjunctive *or* in defining the term "likely" as "in all probability *or* possibility" and "possible *or* probable," it is reasonably possible that the jury was misled into believing that it could convict him if it found *either* that his conduct probably or possibly impaired D's health or morals. (Emphasis added.) We are not persuaded, however, that the use of the disjunctive *or* in this context took on additional significance for the jury in light of the charge considered as a whole.

contends that, even if this evidence of prior misconduct sufficiently was connected in time and character to be relevant under the common plan or scheme exception, the trial court abused its discretion by concluding that the probative value of the evidence outweighed its prejudicial impact. We disagree with the defendant's claims and address them in turn.

After the defendant objected to the admission of E's testimony as to his prior misconduct, the state provided an offer of proof during which E, who was twenty-nine years old at the time of trial, testified that the defendant had sexually abused her while she was a child in his household. E testified that she had lived with the defendant, and other individuals, in a familial setting from the time that she was a small child until the age of nineteen, and had believed, for a considerable period of time, that the defendant was her biological father. E further stated that, at the age of approximately nine years, the defendant had begun engaging in anal intercourse with her and that such sexual assaults had taken place in their home, behind locked doors in either the basement or in the defendant's bedroom, while he and E were the only individuals at home. The defendant allegedly accompanied these incidents of abuse with instructions that E was not to disclose the abuse to anyone because, if she did, the defendant would go to jail and E would be placed into a foster home like her siblings.

At the age of thirteen, the defendant's assaults allegedly evolved into vaginal intercourse and continued to take place, generally in his bedroom, when E and the defendant were at home alone, and they remained accompanied by threats of jail for the defendant and foster care for E if she disclosed the abuse. E also testified as to incidents in which the defendant had forced oral intercourse on her and had played pornographic videotapes on the television in his bedroom.

This alleged sexual abuse continued until E was eighteen years old, at which time she became pregnant with D and, following D's birth, moved out of the defendant's home.[16]

After arguments from counsel,[17] the trial court concluded that E's testimony was relevant for the state to demonstrate a common plan or scheme to sexually abuse young members of his family, and further concluded that the "highly probative and material" nature of the evidence outweighed its prejudicial impact. The trial court went on to indicate, however, that it would provide the jury with limiting instructions, both prior to E's testimony and in its final charge, regarding the purposes for which the jury could consider the evidence.[18] In addition to the limiting instructions, the trial

---

[16] At trial, the defendant denied having sexually abused E while she was a child, but he did testify as to two incidents of consensual intercourse with E when she was approximately seventeen years old.

[17] The state, conceding a significant temporal gap between the defendant's abuse of D and alleged abuse of E, argued that the similarities between abuses outweighed the remoteness in time. Specifically, the state pointed out that: the abuse of E and of D commenced with anal intercourse; the incidents of abuse generally occurred in the defendant's bedroom, with the door locked; the incidents were accompanied by statements as to the consequences if the abuse was revealed to others; the abuse of E and of D began when the victims were approximately the same age; and the victims of the abuses were both familial members of the defendant's household. The state claimed that these parallels made the defendant's alleged abuse of E "strikingly similar" to his abuse of D.

In turn, the defendant claimed that the alleged abuse of E was too remote in time to be relevant and that, with regard to the character of the abuses, the dissimilarities between the alleged abuse of E and the abuse of D were greater than their parallels. Specifically, the defendant contended that the abuses were dissimilar because: E and D were victims of different genders; the temporal span of abuse, and its frequency, were different for both E and D; and E's allegations of abuse, including anal, vaginal and oral intercourse, were broader in terms of the acts alleged to have occurred than D's abuse.

[18] The trial court thereafter did provide such instructions, charging the jury, prior to E's testimony and again in its final instructions, that the jury was to consider the misconduct evidence only for the purpose of demonstrating a common plan or scheme of the defendant to sexually abuse

court also ordered, in an attempt to minimize the potential prejudicial impact of E's testimony as to the prior misconduct, that the state make only slight reference to the evidence during its closing argument.[19]

"[A]s a general rule, evidence of prior misconduct is inadmissible to prove that a defendant is guilty of the crime of which he is accused. . . . Nor can such evidence be used to suggest that the defendant has a bad character or a propensity for criminal behavior. . . . Evidence of prior misconduct may be admitted, however, when the evidence is offered for a purpose other than to prove the defendant's bad character or criminal tendencies . . . [such as] a common plan or scheme. . . .

"In order to determine whether such evidence is admissible, we use a two part test. First, the evidence must be relevant and material to [a common plan or scheme]. Second, the probative value of . . . [the] evidence must outweigh [its] prejudicial effect . . . . Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only whe[n] abuse of [its] discretion is manifest or whe[n] an injustice appears to have been done. . . . On review by this court, therefore, every reasonable presumption should be given in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *State* v. *Merriam*, 264 Conn. 617, 659–61, 835 A.2d 895 (2003). Moreover, in the context of cases involving sexual abuse, we consistently have indicated that the com-

young members of his family and the jury was not to consider the misconduct as evidence of the defendant's bad character or criminal propensity.

[19] In its closing argument, the state made just one reference to the prior misconduct evidence: "The court instructed you about the use of prior acts of misconduct. Please listen to the court's instruction, at the end of the case, as to how you can use that. But just to reiterate, [E] said eight or nine—a similar age to [D]. In a locked room—similar to [D]. Anal intercourse had occurred initially—similar to [D]. It continued for a considerable period of time. However, [D] told someone about it; [E] did not."

mon plan or scheme exception is to be construed more liberally in favor of admissibility. *State* v. *James G.*, 268 Conn. 382, 390, 844 A.2d 810 (2004); *State* v. *Merriam*, supra, 662.

## A

Within the first stage of our analysis, we have articulated three factors to be considered in the determination as to whether evidence of prior sexual misconduct is relevant and material to demonstrate a common plan or scheme: such evidence is admissible when the prior misconduct is: (1) not too remote in time; (2) similar to the charged offense; and (3) committed upon a person similar to the victim in the charged misconduct. *State* v. *Merriam*, supra, 264 Conn. 662. We have indicated that this inquiry should focus upon each of the three factors, as a single factor will rarely be dispositive. See *State* v. *Kulmac*, 230 Conn. 43, 62, 644 A.2d 887 (1994) ("[t]he remoteness in time of a prior incident is rarely, standing alone, determinative of the admissibility of [prior misconduct] evidence"); see also *State* v. *James G.*, supra, 268 Conn. 393–94 (considering all three factors); *State* v. *Merriam*, supra, 662–63 (same).

Applying these principles, we conclude that the trial court did not abuse its discretion by admitting evidence regarding the defendant's alleged prior sexual misconduct in order to establish a common plan or scheme of the defendant to sexually abuse young members of his familial unit. With regard to our first factor, although we recognize that the gap of approximately nine years between the defendant's alleged sexual abuse of E and the beginning of his abuse of D is significant, we do not view the prior misconduct evidence to be so remote in time so as to render it irrelevant or immaterial pursuant to the common plan or scheme exception, particularly given the strong weight the remaining two factors

bring to bear in the determination.[20] In *State* v. *Kulmac*, supra, 230 Conn. 62, we concluded that, although the seven year period between the alleged prior sexual abuse and the charged misconduct was "a long hiatus," the prior misconduct was sufficiently recent such that the trial court had not abused its discretion in admitting the evidence of prior misconduct. Additionally, in *Kulmac* we cited approvingly of two other cases; *United States* v. *Hadley*, 918 F.2d 848, 851 (9th Cir. 1990), and *Adrian* v. *People*, 770 P.2d 1243, 1245 (Colo. 1989); in which evidence of prior misconduct occurring ten years prior to the charged misconduct had been admitted. *State* v. *Kulmac*, supra, 62 n.14.[21] Although increased remoteness in time does reduce the probative value of

---

[20] We calculate the operative time period in this matter to be nine years because the evidence presented at trial indicated that the defendant's alleged abuse of E continued until she had become pregnant with D, and the defendant's subsequent abuse of D began when D was approximately nine years old. The defendant, however, suggests that the appropriate time period for consideration should be the eighteen year gap between the start of the alleged abuse of E and the beginning of the defendant's abuse of D. In the defendant's view, this period is more appropriate because that is the time period when the abuses are the most similar in character in terms of the age of the victim and the particular acts of abuse.

Although the defendant's point that the abuses of D and E are most similar at the time when the alleged abuse of E is most remote is well taken, our jurisprudence indicates that the inquiry as to remoteness is to be resolved with reference to the period between the cessation of the prior misconduct and the beginning of the charged sexual abuse. See *State* v. *James G.*, supra, 268 Conn. 393 (noting temporal overlap between prior misconduct and charged abuse); *State* v. *Merriam*, supra, 264 Conn. 662 (noting eight to nine month gap between abuses); *State* v. *Kulmac*, supra, 230 Conn. 62 (noting seven year gap between abuses); *State* v. *Esposito*, 192 Conn. 166, 170, 471 A.2d 949 (1984) (noting five week gap between abuses).

[21] Moreover, courts in several other jurisdictions have concluded that evidence of prior misconduct was admissible in instances in which the prior misconduct was far more remote in time than the nine year gap involved in the present case. See *United States* v. *Meacham*, 115 F.3d 1488, 1494–95 (10th Cir. 1997) (prior sexual misconduct took place thirty years earlier); *State* v. *McGuire*, 135 Idaho 535, 539–40, 20 P.3d 719 (App. 2001) (twenty-three years); *Smith* v. *State*, 745 So. 2d 284, 289 (Ala. Crim. App. 1998) (time gaps of between eighteen to twenty years and fourteen to twenty years); *State* v. *Christopherson*, 482 N.W.2d 298, 302 (S.D. 1992) (seventeen years).

prior misconduct evidence, we are not persuaded that the trial court abused its discretion in the present case by concluding that a nine year gap was not so remote so as to render the evidence irrelevant and immaterial.

This is particularly so in this case, where the consideration of the remaining two factors—similarity in the character of the offenses and similarity of the victims—reveals a number of distinct parallels between the defendant's alleged abuse of E and his abuse of D. With regard to the similarities between the offenses, in articulating its ruling on the admissibility of the prior misconduct evidence, the trial court drew several comparisons between the defendant's alleged abuse of E and his abuse of D, including the fact that both patterns of abuse: (1) had begun with anal intercourse; (2) had taken place within the defendant's home; (3) generally had been committed within the defendant's locked bedroom; (4) had taken place at times when the defendant and the victim were the only individuals present in the home; (5) had involved the emotional manipulation of the victim regarding the consequences if the abuse were to be revealed; and (6) had consisted of separate acts of abuse over a period of time. In addition to these similarities, we further note the similarity between the testimony of E and D with regard to the defendant's proclivity to accompany his acts of sexual abuse with the viewing of pornographic videotapes. These parallels demonstrate that the defendant's alleged sexual abuse of E was " 'similar to the offense charged' "; *State* v. *James G.*, supra, 268 Conn. 393; such that it was not an abuse of discretion to admit the evidence of prior misconduct.[22]

---

[22] During the course of the defendant's argument on the admissibility of E's testimony following the state's offer of proof, defense counsel himself impliedly conceded the similarities between the defendant's alleged abuse of E and his abuse of D. Specifically, defense counsel represented to the court that E's testimony regarding the details of her abuse, including its commencement by virtue of anal intercourse and the defendant having had locked the door prior to the incidents, should be considered to be of limited

Finally, the defendant's prior misconduct was " 'committed upon [a person] similar' " to the victim in the charged abuse matter. Id. Although of different genders, both E and D were prepubescent minors of approximately the same age when the defendant's sexual abuse had begun. Additionally, both E and D, at the time of the abuses, were under the care of the defendant, either temporarily or more permanently, and shared a common bond of deep affection for the defendant and a natural reluctance to act so as to implicate the defendant in criminal wrongdoing. Once again, there exist enough noticeable similarities between the victims for the prior misconduct evidence to be relevant and material to the defendant's abuse of D.

In determining the relevancy and materiality of prior misconduct evidence, we have recognized the " 'difficulties inherent in [the] balancing process' " of considering remoteness, similarity between offenses and similarity between victims. *State* v. *Merriam*, supra, 264 Conn. 661. For that reason, we defer to the decision of the trial court and only act to upset its determination when there has been a manifest abuse of discretion or when an injustice appears to have been done. Id. In this case, with due deference to the trial court's determination and given our liberal standard of admissibility for prior misconduct evidence in the context of sexual abuse cases, the trial court did not abuse its discretion in determining that the evidence of the defendant's prior misconduct was both relevant and material to a common plan or scheme to sexually abuse young members of his family.

B

Having determined that the evidence regarding the defendant's alleged abuse of E was relevant and mate-

---

probative value because such details suggested that perhaps E had tailored her testimony to mirror that of D with regard to his details of abuse.

rial to the common plan or scheme exception for prior misconduct evidence, we now address whether the evidence nevertheless should have been excluded because its probative force was outweighed by its prejudicial impact. The defendant contends that the evidence of prior misconduct was "devastating" in that the testimony "inflamed the emotions of the jury, aroused hostility against the defendant and made the jury sympathetic to [E and D], while raising side issues that unduly distracted the jury from the main issue [as to] whether the defendant sexually assaulted [D]." We disagree.

We consistently have indicated that "[t]he primary responsibility for . . . determin[ing] whether [prior misconduct] evidence is more probative than prejudicial rests with the trial court, and its conclusion will be disturbed only for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Merriam*, supra, 264 Conn. 664. Moreover, "[w]hen the trial court has heard a lengthy offer of proof and arguments of counsel before performing the required balancing test, has specifically found that the evidence was highly probative and material, and that its probative value significantly outweighed the prejudicial effect, and has instructed the jury on the limited use of the evidence in order to safeguard against misuse and to minimize the prejudicial impact . . . we have found no abuse of discretion . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *James G.*, supra, 268 Conn. 395.

In the present case, the state's attorney presented an offer of proof as to E's testimony, and the trial court heard arguments from both sides on the issues of probative value and prejudicial impact. The trial court specifically concluded that its balancing of the relevant considerations, in addition to its intention to provide a limiting instruction to the jury both prior to E's testimony and in its final charge, as well as its order that the state make minimal reference to the prior misconduct in

its closing argument, was struck in favor of the probative force outweighing the prejudicial impact of the evidence. Although the prior misconduct evidence certainly carried with it some degree of prejudice, we cannot say that its probative value was outweighed in light of the relevancy and materiality of the evidence in order to demonstrate a common plan or scheme. We conclude, therefore, that the trial court did not abuse its discretion in admitting into evidence E's testimony regarding prior sexual misconduct in order to establish a common plan or scheme of the defendant to sexually abuse young members of his family.

## III

The defendant next contends that certain other of the trial court's instructions to the jury violated his federal constitutional right to be informed of the nature and cause of the accusations against him.[23] Specifically,

[23] In his brief, the defendant claims that the trial court's instructions violated his federal due process right to notice and to present a defense, his federal constitutional right to be informed of the nature and cause of the accusations against him pursuant to the sixth amendment to the United States constitution and his parallel state constitutional rights. We view, however, the defendant's federal due process claims as a conflation of his sixth amendment claim because the defendant's analysis focuses entirely on the issue of his right to be informed of the nature and cause of the accusations against him. We therefore analyze the defendant's federal constitutional claim as one arising under the sixth amendment, as incorporated against state action by the due process component of the fourteenth amendment to the United States constitution. The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ." The fourteenth amendment to the United States constitution, § 1, provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

The defendant also claims that his rights as protected by the state constitution; Conn. Const., art. I, § 8; were violated by the trial court's instructions. " 'Although the defendant also claims a violation under the state due process clause, our decision is confined to the federal constitution because the defendant has failed to provide an independent analysis of the state constitutional issue.' " *State* v. *Coney,* 266 Conn. 787, 790–91 n.4, 835 A.2d 977 (2003).

the defendant claims that the trial court improperly instructed the jury that, despite the fact that the information had alleged that the defendant had committed his crimes "on diverse dates between October, 1999 [and] March, 2000," the state did not have to prove the commission of the crimes within that time period and it was sufficient if the state demonstrated that the crimes had taken place at any point prior to the date of the complaint or within the statute of limitations period. In the defendant's view, this charge retroactively denied the defendant his right to be informed of the nature and cause of the accusations against him because it improperly expanded the time frame of the allegations beyond that which had been indicated in the information. Because no exception was taken to the trial court's instructions at trial, the defendant now seeks to prevail under *State* v. *Golding*, supra, 213 Conn. 239–40. See footnote 8 of this opinion. We conclude that the defendant's claim is unavailing.

Prior to the conclusion of the trial, the state filed a request that the trial court instruct the jury that, although the state had alleged the commission of the crimes within a certain time period, time was not an essential element of the offense and it was sufficient for the state to demonstrate the commission of the crimes at any time prior to the date of the complaint within the statute of limitations. Thereafter, in its final charge, the trial court instructed the jury as follows: "Now, in the information the state has alleged the defendant committed the crimes at a certain time. It is not essential in a criminal prosecution that a crime be proved to have been committed at the precise time alleged in the information. It is sufficient for the state to prove the commission of the crime charged at any day prior to the date of the complaint or within the statute of limitations. In this case, you may consider any variance in the testimony on the question of time

in evaluating the credibility of the witnesses. However, bear in mind that time is not an element of the crime which must be proven beyond a reasonable doubt."

"The sixth amendment to the United States constitution . . . guarantee[s] a criminal defendant the right to be informed of the nature and cause of the charges against him with sufficient precision to enable him to meet them at trial. . . . [That] the offense should be described with sufficient definiteness and particularity to apprise the accused of the nature of the charge so he can prepare to meet it at his trial . . . are principles of constitutional law [that] are inveterate and sacrosanct." (Citation omitted; internal quotation marks omitted.) *State* v. *Vumback*, 263 Conn. 215, 221–22, 819 A.2d 250 (2003).

We decline to review the defendant's claim because, in this set of circumstances, the claim fails under the second prong of *State* v. *Golding*, supra, 213 Conn. 239–40, as the defendant has clothed a nonconstitutional claim in constitutional garb. First, time was not an essential element of the offenses with which the defendant was charged. See *State* v. *Morrill*, 197 Conn. 507, 552, 498 A.2d 76 (1985) ("[i]t is a well-established rule in this state that it is not essential in a criminal prosecution that the crime be proved to have been committed on the precise date alleged, it being competent ordinarily for the prosecution to prove the commission of the crime charged at any time prior to the date of the complaint and within the period fixed by the statute of limitations" [internal quotation marks omitted]); accord *State* v. *Mendoza*, 49 Conn. App. 323, 329, 714 A.2d 1250, cert. denied, 247 Conn. 903, 720 A.2d 516 (1998); compare *State* v. *DeJesus*, supra, 260 Conn. 472–73 ("[a]n improper instruction on an element of an offense . . . is of constitutional dimension" [internal quotation marks omitted]).

Second, the defendant has not indicated that there was any adverse impact on his defense as a result of the challenged instruction. The defense in this case was not that the acts of abuse did not take place during the time period between October, 1999, and March, 2000, but that the acts of abuse *never* took place and were the result of retaliatory fabrication by E. The defendant's theory was not harmed by the trial court's instruction as to time and we conclude that the court's broadening of the time period within which the state had to prove that the defendant's criminal acts took place "had no adverse impact upon the defendant sufficient to constitute a deprivation of his constitutional right to be informed of the nature and cause of the accusation [against him] . . . ." (Internal quotation marks omitted.) *State* v. *Orsini*, 187 Conn. 264, 275, 445 A.2d 887, cert. denied, 459 U.S. 861, 103 S. Ct. 136, 74 L. Ed. 2d 116 (1982).

Moreover, even if we were to advance past the second *Golding* requirement, the defendant cannot prevail on the third. "[U]nder the third prong of *Golding*, [a] defendant may prevail . . . on a claim of [unpreserved] instructional error only if . . . it is reasonably possible that the jury was misled . . . ." (Internal quotation marks omitted.) *State* v. *Schiappa*, supra, 248 Conn. 176–77. In this inquiry, "we consider the alleged violation in the context of the entire charge and the entire trial, rather than as individual sentences or phrases viewed in isolation." *State* v. *Walton*, supra, 227 Conn. 66.

Applying that standard, there exists no reasonable possibility that the jury was misled by the charge. As discussed previously, the entirety of the evidence presented by the state at trial focused on the time period between October, 1999, and March, 2000. There was no evidence presented, nor was there any allegation made, as to any sexual abuse of D by the defendant outside

that temporal framework. Put another way, the jury could not have been misled by the trial court's broadening of the time frame of abuse because the *only* evidence presented dealt with abuse during the time period as set forth in the information. The defendant's unpreserved instructional claim therefore fails under the second and third prongs of *Golding*.

The judgment is affirmed.

In this opinion the other justices concurred.